# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

FRANKLIN CUBBAGE,

      Plaintiff,

v.                                    Case No:  5:16-cv-129-Oc-30PRL

NOVARTIS PHARMACEUTICALS
CORPORATION,

      Defendant.

_____/

# ORDER

THIS CAUSE comes before the Court upon Specially-Appearing Defendant Novartis Pharmaceuticals Corporation's ("Novartis") Motion to Dismiss (Doc. 10), Plaintiff's response in opposition (Doc. 31), and Novartis's reply (Doc. 39).  The Court, having reviewed the motion, response, and reply, and being otherwise fully advised in the premises, concludes that the motion should be granted in part and denied in part.[1]

## BACKGROUND

Plaintiff initiated this action in the Fifth Judicial Circuit in and for Sumter County, Florida, on February 11, 2016, alleging claims against Novartis[2] arising from Plaintiff's intravenous treatment with Novartis's pharmaceutical drug Zometa from July 2007 until

---

[1]Novartis requested oral argument on this matter.  (Doc. 11).  But oral argument is unnecessary to resolve the motion, and the request for oral argument is denied.

[2]Amgen Inc., the manufacturer of the drug Xgeva, was also originally named as a defendant in this action, but Plaintiff dismissed his claims against Amgen Inc. on May 13, 2016.  (Docs. 33, 37).

March 2011.  (Doc. 2).  Plaintiff asserts that as a result of his treatment with Zometa, he developed severe osteonecrosis of the jaw ("ONJ").

Novartis removed the action to this Court on March 14, 2016, pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1).  Novartis then filed a motion to dismiss, arguing that Plaintiff's claims should be dismissed because (1) the Court lacks personal jurisdiction over Novartis, (2) Plaintiff's complaint is an impermissible shotgun pleading, and (3) Plaintiff's complaint fails to state a cause of action.  (Doc. 10).

## DISCUSSION

### 1.  Personal Jurisdiction

Novartis first asserts that Plaintiff's complaint should be dismissed because the Court lacks personal jurisdiction over Novartis.  (Doc. 10 at 5-14).  "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010).  The plaintiff bears the initial burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction over a nonresident defendant.  *See id.* at 1257.  The burden then shifts to the defendant to make an evidentiary showing, by affidavits or otherwise, that personal jurisdiction does not exist.  *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

After the defendant has come forward with such evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the

defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)). However, "'[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)). Furthermore, if "'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Diamond Crystal*, 593 F.3d at 1257 (quoting *Meier*, 288 F.3d. at 1269).

### A. Florida's Long-Arm Statute

First, the Court must determine whether Plaintiff has pled adequate facts to permit personal jurisdiction under Florida's long-arm statute. Plaintiff asserts personal jurisdiction under the specific jurisdiction provisions of the Florida long-arm statute.[3] Namely, Plaintiff asserts that specific personal jurisdiction exists because at the time of his injury Novartis was "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." Fla. Stat. § 48.193(1)(a)(1). Alternatively, Plaintiff asserts specific personal jurisdiction under Florida Statute § 48.193(1)(a)(6), which provides for specific personal jurisdiction over a defendant who:

---

[3] Because Plaintiff does not assert general jurisdiction as a basis for personal jurisdiction over Novartis, the Court only considers whether specific personal jurisdiction exists.

3

[caused] injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

a. The defendant was engaged in solicitation or service activities within this state; or

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

To establish that a defendant is "conducting" or "carrying on a business" for the purposes of subsection (1)(a)(1) of the long-arm statute, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (applying Fla. Stat. § 48.193(1)(a)(1) in a diversity jurisdiction case). Additionally, Florida's long-arm statute requires that a plaintiff's claim "aris[e] from" a non-resident defendant's Florida-based business operations. Fla. Stat. § 48.193(1)(a). Florida's First District Court of Appeal has explained that although the term "'arising from' is broad," it nevertheless "requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994) (internal quotation marks omitted).

Here, Plaintiff asserts that he began receiving treatments of Zometa in Pennsylvania in July 2007 and received treatments monthly until March 2011. (Doc. 2, ¶ 3). Plaintiff moved to Florida in January 2008, but continued to reside in Pennsylvania for several months out of the year. (*Id.* at ¶ 3 n.1). Plaintiff continued to receive *monthly* treatments

of Zometa in Pennsylvania while residing there.  (*Id.*).  In his complaint, Plaintiff alleged that Novartis is engaged in the business of marketing, distributing, promoting, testing, labeling, and selling the drug Zometa and that Novartis markets and distributes Zometa in Florida.  (Doc. 2 at ¶ 8).  Novartis does not contradict this assertion.

In fact, Novartis filed the declaration of Robert Gleeson with its motion, which reinforces Plaintiff's allegations that Novartis markets and distributes Zometa in Florida. (Doc. 10, Ex. 1).  Mr. Gleeson reports that Novartis has a registered agent in Florida, sells pharmaceutical products in Florida, annual sales in Florida account for 1.7 to 2.1 percent of Novartis's total annual nationwide sales, and Novartis employs and has employed sales representatives in Florida to inform physicians about the medication Novartis develops, manufactures, and sells.  (*Id.*).  Novartis's annual payroll expenditures in Florida account for approximately 1.8 to 4.2 percent of Novartis's total annual nationwide payroll expenditures.  (Doc. 10, Ex. 1).

Plaintiff sustained an injury—ONJ—in Florida from his use of Zometa in both Pennsylvania and Florida.[4]  Novartis does not deny that it markets and distributes Zometa in Florida, and this assertion is supported by the declaration of Mr. Gleeson.  These unrefuted facts are sufficient to subject Novartis to personal jurisdiction under Florida Statute § 48.193(1)(a)(1) and (6).  *See Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 517-18

---

[4]Novartis asserts that Plaintiff's complaint does not contain allegations that he was administered Zometa in Florida.  (Doc. 39 at 2).  The Court disagrees.  Although the complaint does not state directly "Plaintiff was treated with Zometa in Florida," this fact is easily gleaned from the factual allegations of the complaint.  Plaintiff asserted that he was treated monthly with Zometa from July 2007 until March 2011.  Plaintiff moved to Florida in January 2008, but stayed in Pennsylvania a couple months each year.  It logically follows that Plaintiff must have been treated with Zometa in Florida.  Although it is possible that Plaintiff traveled to Pennsylvania to receive his Zometa treatments each month, all factual inferences must be construed in Plaintiff's favor.  Accordingly, Novartis's argument in this respect is unpersuasive.

(Fla. 2d DCA 2015); *see also SPM Thermo-Shield, Inc. v. SICC*, No. 2:15-cv-439-FtM-29CM, 2015 WL 7076692, at *5 (M.D. Fla. Nov. 13, 2015).

Novartis argues that Plaintiff has failed to demonstrate a substantial connection between his injury and Novartis's conduct in Florida because Plaintiff's claims are based on a failure-to-warn theory and the failure to warn occurred in Pennsylvania.  (Doc. 39 at 2-3).  Novartis takes too narrow a view of "substantial connection."  "The requirement that the plaintiff's cause of action must 'arise from' the defendant's activities is broader than the concept of 'proximate cause,' and is satisfied by a showing of some 'direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state.'"  *Global Digital Solutions, Inc. v. Murphy*, No. 14-80190-CIV, 2014 WL 5089796, at *6 (S.D. Fla. Oct. 9, 2014) (quoting *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001)).  Novartis distributed Zometa in Florida and Plaintiff was administered Zometa in Florida where he was ultimately injured.  This is sufficient to demonstrate a nexus between Plaintiff's causes of action and Novartis's activities in Florida.

Thus, personal jurisdiction is appropriate under Florida's long-arm statute.

## B.  Minimum Contacts

Having determined that Plaintiff satisfied Florida's long-arm statute, the Court must next determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment.  A court may exercise specific personal jurisdiction without violating the Due Process Clause when the defendant "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).   The minimum-contacts requirement focuses on whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).   Whether specific conduct is suit-related depends on "the relationship among the defendant, the forum, and the litigation," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks omitted), including the nature of the claim asserted. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Walden*, 134 S. Ct. at 1124.   The Supreme Court has stated that the minimum-contacts requirement is met when the defendant "purposefully directed" activities at the forum, "and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal quotation marks omitted); *see also Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012).

The exercise of personal jurisdiction over Novartis satisfies the requirements of due process.  Novartis admits that it distributes Zometa nationwide, including in Florida.  (Doc. 10, Ex. 1).  Novartis employs sales persons in Florida and maintains a registered agent. These facts amount to "constitutionally significant contact." *SPM Thermo Shield, Inc.*, 2015 WL7076692, at *5.  By distributing its products in Florida, Novartis purposefully availed itself "of the privilege of conducting activities" in Florida, and thus, should reasonably have anticipated being sued in a Florida court in connection with the products it sold. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006).

In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court must also consider factors such as: the burden on the defendant of litigating in the forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Meier*, 288 F.3d at 1276; *see also Burger King Corp.*, 471 U.S. at 476; *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008).   "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Licciardello*, 544 F.3d at 1284 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).   In sum, the Court must "consider whether the forum's interest in th[e] dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend himself in a Florida court." *Id.* at 1284.

In the present case, it would not be burdensome for Novartis to litigate Plaintiff's claims in Florida as opposed to Pennsylvania—Novartis's suggested forum.   Additionally, Plaintiff is a Florida citizen and Plaintiff's injury occurred in Florida.   Florida would therefore be the most convenient forum for Plaintiff to obtain effective relief.   Florida also has an interest in adjudicating a dispute involving an injury occurring in its state to one of its own citizens.   Consequently, the exercise of personal jurisdiction over Novartis in Florida comports with the Due Process clause.

## 2. Shotgun Pleading

Next, Novartis argues that Plaintiff's complaint should be dismissed because it is an impermissible shotgun pleading. (Doc. 10 at 14-15). Specifically, Novartis complains that each count of Plaintiff's complaint incorporates sixty-four general factual allegations into each count and Plaintiff lumps Novartis and dismissed-Defendant Amgen, Inc. into the same counts. (*Id.*).

Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The hallmark of a shotgun pleading is a complaint that does the following:

> begins with a long list of general allegations, names multiple defendants, all of whom are charged in each count with no distinction made among defendants, and reincorporates allegations of preceding counts such that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.

*Gaviria v. Maldonado Bros., Inc.*, No. 13-60321-CIV, 2013 WL 3336653 (S.D. Fla. July 2, 2013) (citations omitted). Plaintiff's complaint is not a shotgun pleading. While the complaint incorporates the sixty-four general factual allegations from the beginning of the complaint into each count, it does not incorporate allegations of preceding counts into each count. And, although Plaintiff names multiple defendants in each count, it is clear from the complaint which acts are attributed to Novartis and which are attributed to Amgen Inc. The complaint provides Novartis adequate notice of the claims against it and the grounds

upon which it rests.  Accordingly, Plaintiff's complaint will not be dismissed as a shotgun pleading.

### 3.  Failure to State a Claim

Finally, Novartis moves for dismissal of all four counts of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff has failed to state a claim upon which relief could be granted.  (Doc. 10 at 15-25).  Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

As a preliminary matter, it is unclear at this stage of the proceedings whether Pennsylvania law or Florida law applies to Plaintiff's claims.  Pennsylvania law and Florida law differ as to two of Plaintiff's claims—breach of express warranty and negligent marketing—thus, the Court would ordinarily need to make a choice-of-law determination.  But neither party briefed the issue, and the Court is unable to make the fact intensive choice-of-law determination on the record presently before it.  Thus, if Plaintiff's claims survive under either Florida or Pennsylvania law, the claim will be permitted to proceed at

10

this stage of the litigation.   The parties should be prepared to address the choice-of-law question at a later stage of the litigation.

### A. Negligence—Failure to Warn (Count I)

In his first count, Plaintiff alleges a negligent failure to warn on the basis that Novartis failed to provide adequate warnings to Plaintiff and his medical providers regarding the risk of ONJ with the use of Zometa and the proper dosage of Zometa.  (Doc. 2 at 20).  Plaintiff also alleges that Novartis failed to meet the standard of care set by the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, and certain Food and Drug Administration ("FDA") regulations.[5]

Novartis argues that Plaintiff's claim fails because both Florida and Pennsylvania law follow the learned intermediary doctrine and Plaintiff did not plead sufficient facts to satisfy the learned intermediary doctrine.  (Doc. 10 at 16).  Under the learned intermediary doctrine, "'the manufacturer's duty to warn of [a prescription drug's] dangerous side effects [is] directed to the physician rather than the patient.'"  *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1250 (11th Cir. 2013) (quoting *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989)); *see also Cochran v. Wyeth, Inc.*, 3 A.3d 673, 676 (Pa. Super. Ct. 2010).  But contrary to Novartis's contention, Plaintiff does allege that Novartis failed to warn both Plaintiff and his medical providers of the risk of ONJ with use of Zometa.  (Doc. 2 at 20).  This allegation is sufficient to satisfy Plaintiff's burden and dismissal is not warranted on this basis.

---

[5]Novartis contends, and Plaintiff does not dispute, that Plaintiff's claim cannot be premised upon a violation of the FDA regulations because such claim is preempted under federal law.  The Court, therefore, does not address this argument.

Novartis next asserts that Plaintiff's failure-to-warn claim fails because Plaintiff has not demonstrated that Novartis's failure to warn is the proximate cause of his injury. (Doc. 10 at 17). To prevail on a failure-to-warn claim, a plaintiff must prove three elements: (1) the warnings accompanying an item were inadequate, (2) the inadequacy of the warnings caused the plaintiff's injury, and (3) the plaintiff suffered an injury from using the product. *Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008); *see also Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1139-40 (Fla. 4th DCA 2002). Because of the learned intermediary doctrine, however, causation must be demonstrated by establishing that a treating physician would not have prescribed or would have recommended that the patient cease taking the drug if a different, adequate warning had been provided. *See Christopher v. Cutter Labs.*, 53 F.3d 1184, 1187 (11th Cir. 1995); *Baker v. Danek Med.*, 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998).

Admittedly, Plaintiff does not allege in his complaint that his physicians would have made a different prescribing decision had they been provided with an adequate warning. Thus, Plaintiff's claim should be dismissed on this basis. However, since it is possible that Plaintiff could assert adequate allegations to satisfy this element, he will be provided an opportunity to amend this claim.

Novartis argues that such amendment would be futile because Novartis made amendments to Zometa's package insert which warned of the risk of developing ONJ in 2004—prior to Plaintiff's treatment with Zometa. (Doc. 10 at 18). Regarding ONJ, the package insert provided:

Osteonecrosis of the jaw (ONJ) has been reported in patients with cancer receiving treatment regimens including bisphosphonates.  Many of these patients were also receiving chemotherapy and corticosteroids.  The majority of reported cases have been associated with dental procedures such as tooth extraction.   Many had signs of local infection including osteomyelitis.

A dental examination with appropriate preventive dentistry should be considered prior to treatment with bisphosphonates in patients with concomitant risk factors (e.g., cancer, chemotherapy, corticosteroids, poor oral hygiene).

While on treatment, these patients should avoid invasive dental procedures if possible.   For patients who develop ONJ while on bisphosphonate therapy, dental surgery may exacerbate the condition.  For patients requiring dental procedures, there are no data available to suggest whether discontinuation of bisphosphonate treatment reduces the risk of ONJ.   Clinical judgment of the treating physician should guide the management plan of each patient based on individual benefit/risk assessment.

(Doc. 10, Ex. 3 at 12).[6]  Plaintiff counters that Zometa's label downplayed the risk of ONJ in that the label for Zometa states: "Cases of osteonecrosis (primarily of the jaws) have been reported since market introduction.   Osteonecrosis of the jaws has other well documented multiple risk factors.  It is not possible to determine if these events are related to Zometa or other bisphosphonates, to concomitant drugs or therapies . . ., to patients' underlying disease, or to other co-morbid risk factors."  (Doc. 2 at ¶ 32).  The label was subsequently revised to include the following language: "Although causality [of ONJ] cannot be determined, it is prudent to avoid dental surgery to recovery may be prolonged." (*Id.* at ¶ 33).  Finally, the label was again revised in 2007 to state:

Osteonecrosis of the jaw (ONJ) has been reported predominantly in cancer patients treated with intravenous bisphosphonates, including Zometa.  Many

---

[6]Novartis contends that the Court can consider the package insert on the motion to dismiss because it is central to Plaintiff's claims and its authenticity is not in dispute.  (Doc. 10 at 18 n.11).  Because Plaintiff did not object to Novartis's reliance on the package insert and because it is not prejudicial to Plaintiff, the Court considers the package insert in its analysis.

of these patients were also receiving chemotherapy and corticosteroids which may be risk factors of ONJ.  Postmarketing experience and the literature suggest a greater frequency of reports of ONJ based on tumor type . . ., and dental status. . . .  Many reports of ONJ involved patients with signs of local infection including osteomyelitis.  Cancer patients should maintain good oral hygiene and should have a dental examination with preventive dentistry prior to treatment with bisphosphonates.  While on treatment, these patients should avoid invasive dental procedures if possible.  For patients requiring dental procedures, there are no data available to suggest whether discontinuation of bisphosphonate treatment reduces the risk of ONJ.

(*Id.* at ¶ 35).

Plaintiff's failure-to-warn claim is two-fold.  First, Plaintiff asserts that the warnings on Zometa's label was inadequate to properly warn Plaintiff's physicians about the risks of ONJ when using Zometa in its intended manner.  Second, Plaintiff argues that the warning failed to include the risk of overdosing and failed to provide a correct and adequate dosing schedule.  Novartis, on the other hand, asserts that the warning was so comprehensive, no other warning would have caused Plaintiff's doctors to make a different prescribing decision.  (Doc. 10 at 18).

Under Florida law, "'the adequacy of warnings can become a question of law where the warning is accurate, clear, and unambiguous.'"  *Rounds v. Genzyme Corp.*, 440 F. App'x 753, 756 (11th Cir. 2011) (quoting *Felix*, 540 So. 2d at 105).  Based on Plaintiff's allegations, however, the Court does not agree that the package insert was so "accurate, clear, and unambiguous," that whether the warning is adequate has become a question of law.  Thus, this assessment is better left for resolution at the summary judgment stage and does not render amendment of Plaintiff's failure-to-warn claim futile.

In summation, Plaintiff's claim for failure to warn should be dismissed with leave for Plaintiff to amend his claim establishing that his physicians would have made a different prescribing decision had the warnings been adequate.

### B.  Breach of Express Warranty (Count II)

In Count II, Plaintiff alleges that Novartis breached an express warranty to Plaintiff in that Novartis warranted that Zometa was safe, effective, fit, and proper for its intended use.  (Doc. 2 at 21-22).  Novartis contends that Plaintiff's claim for breach of express warranty should be dismissed under Florida law because there is a lack of privity between Plaintiff and Novartis.  (Doc. 10 at 19-20).  Novartis also contends that Plaintiff's claim should be dismissed under Pennsylvania law because Pennsylvania courts have held that such a claim is not viable in a prescription drug products liability lawsuit.  (Doc. 10 at 20-21).

Pursuant to Florida law, the plaintiff must be in privity of contract to recover under theories of breach of express or implied warranties.  *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)); *see also Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005) (stating that "in order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant").  "A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant."  *T.W.M.*, 886 F. Supp. at 844. Plaintiff's complaint does not allege that Plaintiff purchased Zometa directly from Novartis nor that he contracted with Novartis regarding Zometa in some way.  *See Fields v. Mylan*

*Pharm., Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) (concluding that the plaintiff failed to state a claim for breach of express warranty where the plaintiff did not allege facts establishing privity).

Plaintiff recognizes that Florida law requires privity to state a breach of express warranty claim, but argues that it is premature to dismiss his claim for lack of privity at the motion to dismiss stage.  (Doc. 31 at 13-14).  However, courts have routinely dismissed breach of warranty express claims at the motion to dismiss stage.  *See Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2010 WL 9438673, at *6-7 (S.D. Fla. Nov. 23, 2010) (citing *Montgomery v. Davol, Inc.*, No. 3:07cv176/RV/EMT, 2007 WL 2155644 at *4 (N.D. Fla. July 24, 2007); *T.W.M.*, 886 F. Supp. at 843).  Thus, because Plaintiff has not demonstrated privity, his breach of express warranty claim fails under Florida law.

Unlike Florida, Pennsylvania does not require privity to establish breach of express warranty.  But Novartis argues that Pennsylvania does not recognize a claim for breach of express warranty in a prescription drug products liability action.  In *Hahn v. Richter*, 673 A.2d 888 (Pa. 1996), the Pennsylvania Supreme Court stated: "[W]here the adequacy of warnings associated with prescription drugs is at issue[,] . . . the manufacturer's negligence . . . is the only recognized basis of liability."  *Id.* at 891.  More specifically, the court concluded that a failure-to-warn claim could not proceed on a theory of strict liability.  *Id.* The court did not address whether a breach of express warranty claim could proceed in such a case.

Some courts in Pennsylvania have interpreted *Hahn* to mean that Pennsylvania does not recognize a claim for breach of express warranty.[7]  Pennsylvania courts are split on this issue, however, and other courts have found that a breach of express warranty is a viable claim under Pennsylvania law.[8]

*Hahn* only addressed a failure-to-warn claim and did not consider other theories of liability.  To conclude that *Hahn* precludes all other theories of liability, including a claim for breach of express warranty, stretches the holding of that case too far.  A breach of express warranty claim is more akin to a contractual claim than a claim sounding tort.[9]  *See Doughtery*, 2012 WL 2940727, at *9; *see also Dopson-Troutt v. Novartis Pharma. Corp.*, No. 8:06-cv-1708-T-24EAJ, at 4 (M.D. Fla. Apr. 11, 2014).  Thus, the Court concludes that a claim for breach of express warranty is not barred under Pennsylvania law and Plaintiff's claim, in the event Pennsylvania law controls, should not be dismissed on this basis.

---

[7]*See Carson v. Atrium Med. Corp.*, No. 15-830, 2016 WL 3181414, at *4 (W.D. Pa. June 8, 2016); *Cogswell v. Wright Med. Tech., Inc.*, No. 15-295, 2015 WL 4393385, at *4 (W.D. Pa. July 16, 2015); *Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 569 (W.D. Pa. 2014); *Dreisbach v. APP Pharms. LLC*, No. 3:10-cv-00419, 2013 WL 5653460, at *2 (M.D. Pa. Oct. 15, 2013); *Salvio v. Amgen*, 810 F. Supp. 2d 745, 755-56 (W.D. Pa. 2011); *Leonard v. Taro Pharm. USA, Inc.*, No. 10cv1341, 2010 WL 4961647, at *5 (W.D. Pa. Dec. 2, 2010); *Aaron v. Wyeth*, No. 2:07cv927, 2010 WL 653984, at *11 (W.D. Pa. Feb. 19, 2010); *Kline v. Pfizer, Inc.*, No. 08-3238, 2008 WL 4787577, at *3 (E.D. Pa. Oct. 31, 2008).

[8]*See Shelley v. Ethicon, Inc.*, No. 12-6862, 2013 WL 3463505, at *3 (E.D. Pa. July 10, 2013); *Doughtery v. C.R. Bard, Inc.*, No. 11-6048, 2012 WL 2940727, at *4-5 (E.D. Pa. July 18, 2012); *Kee v. Zimmer, Inc.*, No. 11–7789, 2012 WL 1758618, at *3 (E.D. Pa. May 17, 2012); *Horsmon v. Zimmer Holdings, Inc.*, No. 11-1050, 2011 WL 5509420, at *3-4 (W.D. Pa. Nov. 10, 2011); *Esposito v. I-Flow Corp.*, No. 10-cv-3883, 2011 WL 5041374, at *6 (E.D. Pa. Oct. 24, 2011); *Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467, at *10-11 (W.D. Pa. June 16, 2010); *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 751-52 (W.D. Pa. 2004); *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 440-41 (E.D. Pa. 2004).

[9]The Court also emphasizes again that *Hahn* addressed only whether a failure-to-warn claim could be premised upon a theory of strict liability and did not address causes of action under a warranty theory.  *See Lance v. Wyeth*, 85 A.3d 434, 465 n.8 (Pa. 2014) (explaining that strict liability is merely a subset of products liability law).

Last, Novartis contends that even if Pennsylvania recognizes a claim for breach of express warranty with respect to a prescription drug, Plaintiff has failed to sufficiently state a cause of action. (Doc. 10 at 20-21). Specifically, Novartis contends that Plaintiff's allegations are merely a formulaic recitation of the elements of the claim. (*Id.*).

Under the Pennsylvania Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. Cons. Stat. § 2313(a)(1). A promise becomes the basis of the bargain if the plaintiff can prove "'that [he or] she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise.'" *Parkinson*, 315 F. Supp. 2d at 752 (quoting *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *rev'd on other grounds*, 505 U.S. 504 (1992)). A mere recitation of the elements of a cause of action, absent any factual support, specification of a particular promise that became the basis of the bargain, or a showing that the promise was directed at the consumer, is insufficient to withstand dismissal. *See Kester*, 2010 WL 2696467, at *9-11 (dismissing a breach of express warranty claim against a pain pump manufacturer for failing to state a claim under Pennsylvania law).

Plaintiff has not alleged the affirmation of fact or promise allegedly made by Novartis relating to Zometa that would amount to an express warranty. Plaintiff has not pled the details of the content of the express warranty, how it was made, whether it was directed at Plaintiff, and how Plaintiff came to rely upon it. *See McLaughlin v. Bayer Corp.*, No. 14-7315, 2016 WL 1161578, at *12 (E.D. Pa. Mar. 22, 2016) (dismissing a

claim for breach of express warranty because the plaintiff "fail[ed] to allege facts that give rise to a reasonable inference that each alleged warranty was an affirmation of fact or promise that formed a 'basis of the bargain'" between the plaintiff and defendant); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 501-02 (W.D. Pa. 2012) (dismissing a claim for breach of express warranty for being insufficiently pled). Accordingly, Plaintiff's claim is insufficiently pled and should be dismissed. But Plaintiff will be provided leave to amend the claim.

In short, Plaintiff's claim for breach of express warranty would not survive under Florida law due to a lack of privity. However, if Pennsylvania law applies, breach of express warranty is a viable claim. Nevertheless, Plaintiff's claim is insufficiently pled and should be dismissed with leave to amend.

## C.  Negligence—Marketing (Count III)

In Count III, Plaintiff alleges that Novartis was negligent in marketing Zometa as more effective and safe than other treatments for bone metastases when Novartis was aware that Zometa did not adhere to those representations. (Doc. 2 at 22-23). Novartis first argues that a claim for negligent marketing does not exist under Florida law and Plaintiff should be precluded from asserting such a claim. (Doc. 10 at 21-22). Plaintiff concedes that no Florida law exists supporting his claim for negligent marketing, but asserts that he should be permitted to allege such a claim regardless of the lack of supporting law. (Doc. 31). The Court disagrees with Plaintiff, and concludes that to the extent Plaintiff's claim is governed by Florida law, Plaintiff's claim for negligent marketing should be dismissed.

Pennsylvania law, on the other hand, does recognize a claim for negligent marketing. *See Lance*, 85 A.3d at 465; *Hricik v. Stryker Biotech, LLC*, 89 F. Supp. 3d 694, 704 (E.D. Pa. 2015).   Novartis contends, however, that Plaintiff has failed to state a sufficient claim for negligent marketing.  (Doc. 10 at 22).  The Court disagrees.

Pursuant to the Pennsylvania Supreme Court's decision in *Lance*, Plaintiff has wide latitude in pleading his negligence claims, up to and including a claim for negligent marketing.  *See Lance*, 85 A.3d at 460 (agreeing with amici that "'[a] manufacturer's negligent conduct can occur at any stage of the marketing process: in the initial design of the [product], in the failure to investigate information about the risks the [product] poses, and in its decision to continue to sell the [product] despite those unreasonable risks.  The defendant's unreasonable behavior at any point in this process should be sufficient to give rise to negligence liability when that conduct results in injury.'").  Contrary to Novartis's assertions, Plaintiff has no obligation to satisfy a very narrow set of circumstances in alleging a negligent marketing claim under Pennsylvania law.

Count III will therefore not be dismissed to the extent Plaintiff's claims are governed by Pennsylvania law.

### D.  Negligence—Negligent Misrepresentation (Count IV)

By Count IV, Plaintiff asserts that Novartis negligently represented to Plaintiff and his physicians that Zometa was safe for its intended use and more effective and safe than other treatments for bone metastases.  (Doc. 2 at 23-24).  Novartis argues that Plaintiff's claim for negligent misrepresentation fails because it is insufficiently pled.  (Doc. 10 at 23-25).  Namely, Novartis contends that Plaintiff failed to allege an intent to reduce reliance

on the alleged misrepresentation and that the claim is not pled with particularity as required under Federal Rule of Civil Procedure 9(b). [10]

Under Pennsylvania and Florida law, to prove negligent misrepresentation, a plaintiff must prove: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known of its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999); *see also Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985). Additionally, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"'Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges.'" *Kester*, 2010 WL 2696467, *12 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Although allegations of time, date, or place satisfy the particularity requirements, a plaintiff can also satisfy the pleading requirements by "pleading with a degree of precision or some measure of substantiation into the fraud allegation." *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

---

[10]Novartis also argues that the claim fails under the learned intermediary doctrine for the same reasons it raised with respect to Plaintiff's failure-to-warn claim. (Doc. 10 at 23). But for the same reasons the Court concluded that Plaintiff's failure-to-warn claim should not be dismissed under the learned intermediary doctrine, Plaintiff's negligent misrepresentation claim should not be dismissed under the learned intermediary doctrine.

First, Plaintiff does allege that Novartis intended to induce reliance.  Paragraph 85 of the complaint states: "[Novartis was] negligent in making said representations because [it] knew or should have known that the representations were false and that Plaintiff's medical providers and Plaintiff . . . would rely upon the false representations."  (Doc. 2 at ¶ 85).  The claim is therefore sufficient in this regard.

As to its conformance with Rule 9(b), Plaintiff alleges that Novartis misrepresented to healthcare providers and the public that Zometa was proper for its intended use and more effective and safe than other treatments for bone metastases and Novartis knew that Zometa was less safe than other treatments and not fit for its proper and intended use.  (*Id.* at ¶ 84). Plaintiff alleges that the misrepresentations were found on Zometa's label and package inserts and were also communicated by the oral representations of Novartis's sales representatives.  (*Id.* at ¶¶ 31-36).  In his complaint, Plaintiff describes the representations on the labels and inserts and explains why he believes those representations were false or misleading.  (*Id.* at ¶¶ 21-22, 30, 32-35).

The particularity requirement under Rule 9(b) is intended to provide defendants with adequate information to defend against the claims and understand the when, what, where, and how of the alleged misrepresentations.  *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007)).  Plaintiff has alleged sufficient factual matter to satisfy this requirement, and, therefore, this claim is not subject to dismissal.

## CONCLUSION

After due consideration, it is hereby **ORDERED AND ADJUDGED:**

1.      Specially-Appearing Defendant Novartis Pharmaceuticals Corporation's ("Novartis") Motion to Dismiss (Doc. 10) is GRANTED in part and DENIED in part as discussed herein.

2.      With fourteen (14) days of the date of this Order, Plaintiff may file an amended complaint.

**DONE** and **ORDERED** in Tampa, Florida, this 5th day of July, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

23